COMMONWEALTH of Kentucky, LABOR CABINET, a/k/a Commonwealth of Kentucky, Environmental and Public Protection Cabinet, Department of Labor, Appellant,

v.

Michael R. HASKEN, Sr., and other individual Appellees as Designated in the Notice of Appeal; City of Louisville; and Louisville/Jefferson County Metro Government, Appellees.

And:

Michael R. Hasken, Sr., and other individual Cross–Appellants as Designated in the Notice of Appeal, Cross–Appellants,

v.

Commonwealth of Kentucky, Labor Cabinet a/k/a Commonwealth of Kentucky, Environmental and Public Protection Cabinet, Department of Labor; and City of Louisville, Cross–Appellees.

And:

Metro Louisville/Jefferson County Government; and City of Louisville, Appellants,

v.

Michael R. Hasken, Sr., and Other individual Appellees as Designated in the Notice of Appeal, Appellees.

Nos. 2005–CA–001949–MR, 2005–CA–001970–MR, 2005–CA–001971–MR.

Court of Appeals of Kentucky.

Aug. 3, 2007.

Discretionary Review Denied by Supreme Court Oct. 15, 2008.

Edwin S. Hopson, Mitzi D. Wyrick, Angela McCorkle Buckler, Louisville, KY, for appellants/cross-appellees, City of Louisville and Louisville/Jefferson County Metro Government.

Douglas L. Steele, Thomas A. Woodley, Washington, D.C., Herbert L. Segal, Louisville, KY, for appellees, Michael J. Kurtsinger, Louisville Professional Fire Fighters Local 345, et al.

John D. Parsons, Frankfort, KY, Briefs for appellees/cross-appellants, Commonwealth of Kentucky, Department of Labor.

Ann B. Oldfather, Vicki L. Buba, Louisville, KY, for appellees/cross-appellants, Hasken, Plaintiffs.

Before ACREE and LAMBERT, Judges; KNOPF,[1] Senior Judge.

## OPINION

ACREE, Judge.

This is an appeal from a Jefferson Circuit Court's decision to modify the Final Order of the Secretary of the Department of Labor (Secretary) by reinstating the Hearing Officer's Recommended Order determinative of overtime pay for Louisville firefighters. Also at issue is a cross-appeal from the circuit court's decision to uphold the Final Order of the Secretary excluding the firefighters' Clothing Allowances from the calculation of overtime pay and declining to toll the statute of limitations that prohibits claims for overtime pay older than five (5) years. We affirm the circuit court's ruling in all respects, upholding remand of the case to the Department of Labor for reinstatement of the Recommended Order as the Final Order, denial of the Clothing Allowance as a component of remuneration, and declining to toll the statute of limitations.

## PROCEDURAL AND FACTUAL BACKGROUND

In May of 2000, Michael J. Kurtsinger, acting individually as a Louisville firefighter and as a representative of the Louisville Professional Firefighters Association, Local 345, filed a wage and hour complaint with the Kentucky Department of Labor challenging the methods used by the City of Louisville (the City) to calculate overtime pay. Specifically, he claimed that certain additional elements of pay including State Incentive Pay (or Educational Incentive Pay), Longevity Pay, a Salary Supplement, a "July Bonus," and a Clothing Allowance were wrongfully excluded from the firefighters' "total remuneration" used to calculate overtime pay. The Department of Labor agreed that portions of the complaint were valid.

Larry Roberts, Director of the Division of Employment Standards, Apprenticeship and Training, of the Department of Labor, examined the claim initially. He prepared Tentative Findings of Fact concluding that all amounts received by the firefighters with the exception of the Clothing Allowance were indeed remuneration and should have been included in the calculation of the firefighters' hourly rate. The Clothing Allowance was determined to be reasonable reimbursement for clothing costs rather than additional compensation. He also determined that Kentucky Revised Statute

---

1. Senior Judge William L. Knopf sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

(KRS) 413.120 prohibited claims for overtime pay older than five (5) years.

To properly calculate overtime for permissible claims, it was necessary to create a formula to determine the regular hourly rate of pay for firefighters. Mr. Roberts determined that a firefighter's annual compensation (which included all of the above additional elements of pay except the Clothing Allowance) should be divided by 2,912 (the number of scheduled hours) rather than 2,080 (the annual number of hours derived from a typical 40–hour work week). Simple principles of mathematics establish that the larger the divisor, the smaller the hourly rate of pay and, consequently, the smaller the amount of overtime pay owed by the City to the firefighters.

Mr. Kurtsinger, now joined by current and former City firefighters (Kurtsinger Appellees) and retired City firefighters (Hasken Appellees), appealed the Tentative Findings of Fact and were granted a hearing before Hearing Officer Robert S. Jones of the Kentucky Attorney General's Office, Administrative Hearings Division.

Following the hearing, Hearing Officer Jones issued Findings of Fact, Conclusions of Law, and a Recommended Order which adopted the original Tentative Findings of Fact in all respects except one-the formula used to calculate overtime pay. Instead of using 2,912 hours as the divisor, Hearing Officer Jones concluded that the proper divisor was 2,080 hours.

The City and Department of Labor filed exceptions to the Recommended Order claiming the 2,080 hour divisor was improper, preferring use of the 2,912 hour divisor. Appellees also filed exceptions challenging the Hearing Officer's refusal to include the Clothing Allowance as a factor in the calculation of overtime, and challenging his refusal to toll KRS 413.120 on grounds that the City's actions delayed discovery of the claim for overtime pay. In response, the Secretary reinstated the 2,912 hour divisor based on his interpretation of 803 Kentucky Administrative Regulations (KAR) 1:060. The Secretary adopted the hearing officer's recommendation in all other substantive respects.

Both the Kurtsinger Appellees and the Hasken Appellees appealed the Secretary's Final Order to the Jefferson Circuit Court. Appellees challenged the determination of the 2,912 hour divisor, the exclusion of the Clothing Allowance factor, and the refusal to toll the statute of limitations.

The Jefferson Circuit Court found that the Secretary's interpretation of 803 KAR 1:060 was "sufficiently arbitrary and capricious to require reversal." Furthermore, the circuit court noted that the Secretary failed to comply with KRS 13B.120(3) which required the Secretary to include separate findings of fact justifying deviation from the recommended order. The circuit court then remanded the case to the Department of Labor for reinstatement of the Hearing Officer's Findings of Fact, Conclusions of Law, and Recommended Order as the Final Order of the Department of Labor. The circuit court also held that the Clothing Allowance was properly excluded from total remuneration and, contrary to the Hasken Appellees' argument otherwise, the statute of limitations was not tolled.

The City and the Kentucky Department of Labor appealed the circuit court's Opinion and Order in an effort to have the 2,912 hour divisor reinstated. The Hasken Appellees filed a cross-appeal seeking reversal of the circuit court's ruling that the Clothing Allowance was not remuneration and that the statute of limitation, KRS 413.120, was not tolled.

### STANDARD OF REVIEW

Under KRS 13B.140, all agency decisions are subject to judicial review. Our

standard of review is established by statute. KRS 13B.150(2) directs that

> [t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the final order or it may reverse the final order, in whole or in part, and remand the case for further proceedings if it finds the agency's final order is:
>
> (a) In violation of constitutional or statutory provisions;
>
> (b) In excess of the statutory authority of the agency;
>
> (c) Without support of substantial evidence on the whole record;
>
> (d) Arbitrary, capricious, or characterized by abuse of discretion;
>
> (e) Based on an ex parte communication which substantially prejudiced the rights of any party and likely affected the outcome of the hearing;
>
> (f) Prejudiced by a failure of the person conducting a proceeding to be disqualified pursuant to KRS 13B.040(2); or
>
> (g) Deficient as otherwise provided by law.

KRS 13B.150(2)(a)-(g).

If the question to be answered on appeal concerns the construction and application of statutes or regulations, and therefore concerns a matter of law, this Court is authorized to review the question on a *de novo* basis. *Aubrey v. Office of Attorney General,* 994 S.W.2d 516, 519 (Ky.App. 1998).

### THE DIVISOR AND THE REINSTATEMENT OF THE RECOMMENDED ORDER

■ The dispute over the proper divisor to be used in calculating overtime pay arises because firefighters are mandated by statute to be available at all hours. KRS 95.275. A typical schedule for a firefighter is twenty-four (24) hours on and forty-eight (48) hours off. This leads to a typical work week of either forty-eight (48) hours or seventy-two (72) hours—an average of fifty-six (56) hours per week—or 2,912 hours per year (56 hours/week × 52 weeks). Thus, the point of controversy is whether to use the total number of hours for which firefighters are scheduled as the divisor to convert firefighters' annual pay to an hourly rate, or to use the traditional forty (40) hour work week figure as the divisor.

The statute mandating the hourly rate employers must pay employees who work in excess of forty hours per week states:

> No employer shall employ any of his employees for a work week longer than forty (40) hours, unless such employee receives compensation for his employment in excess of forty (40) hours in a work week at a rate not less than one and one-half (1½) times the hourly wage rate at which he is employed[.]

KRS 337.285.

To assist in the calculation of the required one and one-half times hourly wage rate, the Department of Labor issued official statutory interpretations in the form of administrative regulations in 803 KAR 1:060. Two sections of this regulation, Sections 6 and 7(1), were cited by both Hearing Officer Jones in his Recommended Order and by the Secretary in the Final Order. Their interpretations are at odds. The sections read as follows:

> Section 6. The overtime compensation is an hourly rate. The overtime compensation under KRS 337.285 is based on the rate per hour. The statute does not require employers to compensate employees on an hourly rate basis; their earnings may be determined on a piece rate, salary, commission, or other basis, but in such case the overtime compensa-

tion due employees must be computed on the basis of the hourly rate derived therefrom and, therefore, it is necessary to compute the hourly rate of such employees during each work week. The hourly rate of pay of an employee is determined by dividing his total remuneration for employment in any work week by the total number of hours actually worked by him in that work week for which such compensation was paid. The following section gives some examples of the proper method of determining the regular hourly rate of pay in particular instances.

Section 7(1). Hour rate employee. If the employee is employed solely on the basis of a single hourly rate the overtime work he must be paid, in addition to his straight-time hourly earnings, a sum determined by multiplying one-half (1/2) the hourly rate by the number of hours worked in excess of forty (40) in the work week. If the employee receives, in addition to his earnings at the hourly rate, an additional production bonus, the overtime must be paid on the total hourly rate received by the employee. This would be computed by adding the additional pay to the regular hourly rate and dividing by the total number of hours worked.

803 KAR 1:060, Sections 6 and 7(1).

The Hearing Officer's interpretation of the above provisions in his Recommended Order focused on the portion of Section 6 which states, "the hourly rate of pay of an employee is determined by dividing his total remuneration for employment in any work week by the total number of hours actually worked by him in that work week *for which such compensation was paid.*" (Emphasis added). The Hearing Officer interpreted this emphasized language as requiring a factual examination of the intent of the parties, i.e., how many hours

were the additional elements of pay (State Incentive Pay, Longevity Pay, Salary Supplement, and the July bonus) intended to cover? To determine this intent, the Hearing Officer examined the Collective Bargaining Agreement between the City of Louisville and the Louisville Professional Firefighters Association, Local Union 345 (CBA), as well as the prior conduct of the parties.

The CBA addressed a 40–hour work week and divided the Longevity Pay and Salary Supplement into equal bi-weekly installments paid throughout the year. Similarly, but by statute instead of by contract, the State Incentive Pay was divided into equal bi-weekly installments. KRS 95A.240 and 815 KAR 45:035. The CBA, consistent with KRS 95.275, also entitled firefighters to one and one-half times the regular hourly rate of pay for all hours worked in excess of forty (40) in any one work week. Furthermore, the Hearing Officer found that the City of Louisville used a divisor of 2,080 on those previous occasions when it paid overtime to firefighters for additional elements of pay (Longevity Pay, Salary Supplement, etc.). These factors made it clear to Hearing Officer Jones that the intent of both parties was that the additional elements of pay were compensation for the forty-hour work week described in the CBA. Therefore, he concluded as a matter of law that "the divisor to be used to convert State Incentive Pay, Longevity Pay, Salary Supplement, and the July Bonus, to an hourly rate for purposes of calculating the firefighters' overtime rate was 2,080."

The Secretary interpreted the regulation differently with respect to the calculation of the hourly rate. He concluded that no element of intent was included, either explicitly or implicitly, in 803 KAR 1:060, and all that was required was a simple mathematical calculation based on the

number of hours an employee works in a particular week (usually either 48 or 72), or 2,912 hours per year.

The circuit court found that the Hearing Officer's interpretation, rather than that of the Secretary, was correct. In so doing, the court reiterated that the regulation requires an examination of the intent of the parties with respect to the various additional elements of pay to determine the number of hours "for which such compensation was paid." Like the Hearing Officer, the circuit court concluded that the language of the CBA and other evidence established that the intent of the parties was that "such compensation" (i.e. State Incentive Pay, Longevity Pay, Salary Supplement and the July Bonus) was paid for the forty-hour work week set forth in the CBA.

The court went on to reject the Final Order's purely mathematical calculation of actual hours worked and found that this interpretation of the regulation completely ignored the regulatory phrase, "for which such compensation was paid". Based on this error in the Secretary's interpretation, the circuit court ordered reinstatement of the Hearing Officer's Recommended Order as the agency's Final Order.

■ Appealing the reinstatement of the Recommended Order, the City argues that the circuit court is not permitted to substitute its judgment for that of the Department of Labor based on the significant deference a circuit court must show an administrative agency interpreting its own regulations. This argument is unconvincing. Although a circuit court must show significant deference to an agency's ruling, the circuit court *is* allowed to substitute its judgment as to the proper interpretation of the agency's regulation where that agency's interpretation is arbitrary or capricious. This is consistent with the holding in *Hagan v. Farris*, 807 S.W.2d 488 (Ky.1991), in which our Supreme Court held that an agency's interpretation of a regulation is valid "only if the interpretation complies with the actual language of the regulation." *Id.* at 490.

■ The City further argues that the Secretary's interpretation is based squarely upon Kentucky Wage and Hour Law and should therefore be upheld. It premises this argument on the Secretary's interpretation of Section 6 and Section 7 of 803 KAR 1:060. First under Section 6, the City emphasizes the language "the hourly rate of pay of an employee is determined by dividing his total remuneration for employment in any work week by the total number of hours actually worked by him in that work week." The City uses this language to claim that the Secretary's interpretation was purely mathematical because that isolated section of the regulation calls for such an examination. However, conspicuously lacking is any consideration of this language in context. It is an elemental rule of statutory construction that "[n]o single word or sentence is determinative, but the statute as a whole must be considered." *County of Harlan v. Appalachian Reg'l Healthcare, Inc.*, 85 S.W.3d 607, 611 (Ky.2002). The same rules of construction or interpretation that apply to statutes also apply to regulations. *Marksberry v. Chandler*, 126 S.W.3d 747, 753 (Ky.App. 2003). The Secretary failed to follow this rule of construction.

In context, the analysis requires a determination of the number of hours for which the additional elements of pay were intended to constitute compensation. To make this determination, the Hearing Officer properly examined the CBA and the parties prior practices. We believe this is a valid and accurate source to determine the parties' intent. This led the Hearing Officer, the circuit court, and now this Court, to the reasonable conclusion that

the parties intended to use the additional elements of pay as compensation for a regular forty-hour work week.

■ The City attempts to contradict this assertion by referring to the example listed in the regulation, which states:

> If the employee receives, in addition to his earnings at the hourly rate, an additional *production bonus*, the overtime must be paid on the total hourly rate received by the employee. This would be computed by adding the additional pay to the regular hourly rate and dividing by the total number of hours worked.

803 KAR 1:060, Section 7 (emphasis added). The City claims this language proves that the Secretary's divisor of 2,912 was proper as it was based on the "total number of hours worked." However, we find this argument to be lacking, once again, when read in context. The regulation states *"If* the employee receives ... an additional *production bonus,"* the hourly rate should be computed by dividing total compensation by total number of hours worked. Use of the conditional language shows it applies only *if* the additional element of pay in question is a *production bonus*. There is inherent logic in tying an individual employee's production bonus to hours that individual actually worked.

The appellants argue that the elements of pay of State Incentive Pay, Longevity Pay, Salary Supplement and the July Bonus are in fact production bonuses. We disagree. Production bonuses are typically variable in nature and are conditioned upon some sort of measurable element of production. None of the elements of pay in question here is either variable or conditional. These are elements of compensation which all eligible firefighters receive. The State Incentive Pay, the Longevity Pay, and the Salary Supplement are split into twenty-six equal installments and are

included in each firefighters pay check. The July Bonus is included in one two-week pay period in July. The amount of these additional elements of pay does not fluctuate, nor is it conditional, for example, on the number of fires extinguished or lives saved in a given pay period. Regardless of any individual firefighter's "production" in his or her capacity as a firefighter, every firefighter receives additional remuneration in the form of State Incentive Pay, Longevity Pay, Salary Supplement and the July Bonus. Since these elements of pay are not production bonuses, Section 7's example does not apply. However, the remaining portion of Section 7(1) is relevant to the extent it does not deal with a production bonus and will be addressed *infra.*

The City goes on to argue that even if the circuit court's interpretation of 803 KAR 1:060 was correct—that intent is relevant in determining the number of hours for which compensation is paid—it erred in overruling the Secretary's Final Order because the Final Order was based on substantial evidence that the intent of the parties was that the additional elements of pay were remuneration not for a forty (40) hour work week, but for an average fifty-six (56) hour work week. To support this assertion, Appellants cite portions of the CBA which "make numerous references to 56–hour employees." For example, Article 16 states "[e]ach Platoon shall be on duty for twenty-four (24) consecutive hours, which the Platoons serving twenty-four (24) hours shall be allowed to remain off duty for forty-eight (48) consecutive hours. . . . The normal work day for 56–hour employees will be from 0800 hours to 0800 hours." The appellants also cite the Schedule of Salary Equivalents attached to the CBA which stipulates an hourly rate which uses a multiplier of 2,912 to deter-

mine the total amount paid to firefighters on an annual basis.

We disagree that these portions of the CBA provide substantial evidence of the intent of the parties that would prohibit the circuit court from reinstating the Recommended Order as the Final Order. References to "56–hour employees" in the collective bargaining agreement are characterizations of the firefighters' employment status based on their average work schedule. They are not manifestations of the parties' intent as to hours by which the hourly overtime rate should be calculated. Similarly, the inclusion of a total compensation amount in the Schedule of Salary Equivalents, which is based on a multiplier of 2,912, does not manifest intent relative to an implicit agreement between the parties that all elements of compensation are based on a 56–hour work week. Rather it merely reflects the average hours worked by a firefighter in a year. The sections of the CBA that reference the additional elements of pay do not speak in terms of a fifty-six (56) hour work week. Rather in Article 13, Section 1, the agreement states clearly that overtime is to be computed on a forty (40) hour work week basis. This is a clear manifestation of the parties' intentions with respect to the hourly basis by which overtime should be calculated. Scheduling references which describe the total or average number of hours worked by the firefighters do not override this manifestation of intent. Thus, the Secretary's decision was not supported by substantial evidence that the elements of pay were compensation for actual hours worked in a given work week and was therefore subject to modification by the circuit court.

The City further argues that the Sixth Circuit case of *Sharpe v. Cureton*, 319 F.3d 259 (6th Cir.2003), which denied relief to a plaintiff firefighter who claimed the City of Knoxville was improperly calculating his overtime pay based on a fifty-six (56) hour work week, is instructive. We agree. However, because it is distinguishable from the case at bar, it is not controlling. As in the case *sub judice*, *Sharpe* involved a dispute over the proper divisor by which total compensation should be divided to calculate the firefighter's hourly rate. In *Sharpe*, the applicable collective bargaining agreement between the firefighters and the City of Knoxville stipulated a base salary, making them salaried employees, with an hourly rate derived therefrom only for the purpose of computing overtime. The CBA makes it clear that Louisville firefighters are hourly employees. This restricts the applicable law to that which has been described *supra* and makes the precedent set in *Sharpe* distinguishable from the issue in this case.

We therefore hold, as the circuit court did below, that the Secretary's interpretation of the regulation was error. Given that he essentially ignored a portion of the regulatory language in his interpretation, we also find that this misinterpretation was arbitrary and capricious and therefore subject to revision. We affirm the circuit court's finding that the Final Order of the Secretary was premised on an erroneous interpretation of the regulation and was not supported by substantial evidence of record. We therefore affirm the circuit court's order reinstating the Hearing Officer's Recommended Order as the Final Order.

Our decision is not only proper as a matter of law, it is also consistent with this Court's prior decision in *City of Frankfort v. Davenport*, 2006 WL 2380792 (Ky.App. 2006)[2] in which we also interpreted 803

2. Even though *Davenport* was unpublished, under 7 Ky. Prac. R. Civ. Proc. Ann. Rule

KAR 1:060, Sections 6 and 7. The facts of that case are strikingly similar to those of the case before us. In *Davenport,* the issue was whether to divide the weekly equivalent of the annual incentive bonus earned by paramedics by all hours actually worked in a week, or by forty (40). Paramedics of the City of Frankfort worked similar schedules to that of the Louisville firefighters—24–hours on, 48–hours off, leading to a typical work week of forty-eight (48) or seventy-two (72) hours. As with the firefighters, the paramedics were compensated based on an hourly rate. The City of Frankfort had passed an ordinance which provided an incentive bonus to all Paramedics who maintained active paramedic certification. The payment of the yearly incentive was spread out over the year in 26 bi-weekly paychecks.

Even though the City of Frankfort and the paramedics agreed that overtime was payable on the incentive over forty (40) hours, they disagreed on the formula for calculation of the paramedics' hourly rate. The City argued that total compensation should be divided by the total number of hours worked in a week. The paramedics contended that the formula for deriving the hourly rate should be total compensation divided by forty (40) hours. Not surprisingly, the Secretary agreed with the formula urged by the City of Frankfort. On appeal, the Franklin Circuit Court agreed with the paramedics' formula and reversed and remanded the Secretary's final order. The City of Frankfort and the Department of Labor appealed.

On appeal, this Court upheld the circuit court's reversal of the Secretary's final order finding that because Section 7(1) of 803 KAR 1:060 requires consideration of "anything worked over forty hours as

overtime, ... the incentive pay [is] also based on a forty-hour work week." Analysis of the intent of the parties did not come into play. Instead, the Court interpreted the portion of Section 7(1) which did not deal with production bonuses to mean that the State requires overtime to be calculated based on a forty (40) hour work week. Applying this reasoning to the case at bar would lead to the same result as the analysis of the parties' intentions based on Section (6). That is, overtime should be calculated based on a forty (40) hour work week. Therefore, in addition to the independent reasoning of this opinion, principles of *stare decisis* support the determination that the firefighters' additional elements of pay—State Incentive Pay, Longevity Pay, Salary Supplement and the July Bonus—are compensation based on a forty (40) hour work week and, therefore, it is entirely appropriate to determine their hourly wage for purposes of overtime calculations by dividing the total additional elements of pay received on an annual basis by 2,080 hours.

### THE CLOTHING ALLOWANCE

On cross-appeal, the Hasken Appellees claim the Clothing Allowance was wrongly excluded from total additional elements of pay in calculating the hourly rate by which the firefighters' overtime rate is derived. From the initial Tentative Findings of Fact to the Jefferson Circuit Court's decision, all have held that the Clothing Allowance is not an element of compensation, but rather a reimbursement for reasonable work-related expenses. Because the circuit court affirmed the Secretary's Final Order with respect to the exclusion of the Clothing Allowance from total remuneration, our standard of review

76.28 (6th ed.2007) "unpublished Kentucky appellate decisions, rendered after January 1, 2003, may be cited for consideration by the

court if there is no published opinion that would adequately address the issue before the court."

is to determine whether the circuit court's finding upholding the agency's decision was clearly erroneous. *See Johnson v. Galen Health Care, Inc.,* 39 S.W.3d 828, 833 (Ky.App.2001). Because we find that the circuit court's ruling that substantial evidence exists to support the Secretary's findings with respect to this matter was not clearly erroneous, we affirm the circuit court's decision as to the exclusion of the Clothing Allowance from additional elements of pay.

The Hearing Officer's description of the nature of the Clothing allowance was adopted by the Secretary and is as follows:

The purpose of payments designated as the annual clothing allowance of $724 paid to the firefighters in two equal installments during each fiscal year is to provide employees reimbursement for clothing and equipment costs incurred by the employees. The allowance is not always sufficient to cover the actual costs incurred by the employees for these elements.

The Hasken Appellees claim that the City's withholding of taxes establishes that the Clothing Allowance is remuneration for services performed by employees for their employer. They base this argument on portions of the Internal Revenue Code which state that employers must withhold taxes from the payment of wages and that wages are "remuneration for service performed by an employee for his employer." We disagree with this reasoning.

The Clothing Allowance was included in wages and subject to federal withholdings because it was unsubstantiated, not because it was remuneration. Under 26 C.F.R. § 31.3121(a)–3, unsubstantiated expenses or reimbursements are subject to federal withholding, regardless of whether they are remuneration for services performed or reimbursements for expenses paid. For this reason, the Clothing Allow-ance was included in the firefighters' wages and was subject to federal withholdings.

Moreover, even though included in total wages, the Clothing Allowance was not remuneration for purposes of calculating overtime pay because it was not compensation for services performed for the City by the firefighters. The Clothing Allowance is a payment by which firefighters are reimbursed for having to purchase their own work-clothing. This is no different than if the City had purchased clothing and distributed it to the firefighters, which surely would not be considered compensation in exchange for services. Just as the disbursement of clothing would not be an element of remuneration, neither are payments which reimburse the firefighters for purchasing clothing on their own.

This finding is supported by 803 KAR 1:060, Section 8, entitled "Payments Excluded from Computing Hourly Rate," which states in pertinent part that "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interest and [which are] properly reimbursable by the employer" are excluded from compensation in the calculation of the hourly rate from which the overtime rate is derived. The Clothing Allowance is reimbursement for "other expenses incurred by the employee in furtherance of the employer's interest," namely the expense of purchasing suitable work-clothing. Therefore, because it was not clearly erroneous, we affirm the circuit court's ruling which upholds the Hearing Officer's and Secretary's independent determinations that the Clothing Allowance should be excluded from the firefighters' additional elements of pay for purposes of calculating overtime pay.

### THE TOLLING OF THE STATUTE OF LIMITATIONS

■ The Hasken Appellees also appeal the circuit court's refusal to toll the statute of limitations based on the doctrine of "equitable tolling."[3] Although the circuit court's ruling was an affirmation of the Secretary's Final Order, which would normally mean our standard of review would be to determine whether the affirmation was clearly erroneous, the issue regarding the equitable tolling of the statute of limitations was one for the circuit court to decide as a matter of law. In light of this fact, the circuit court correctly acknowledged that it was not bound by the administrative decisions on this matter. Likewise, this Court is under no obligation to give deference to the Cabinet's ruling regarding this issue.

■ The Hasken Appellees argue that our review of the circuit court's decision should be *de novo*. However, just as the circuit court held below, whether our review is *de novo* or whether it is based on a clearly erroneous standard, the result is the same. For the reasons stated *infra*, the doctrine of equitable tolling does not apply under these facts. We therefore affirm the circuit court's decision regarding the tolling of the statute of limitations which effectively cuts off claims for overtime pay which are more than five years removed from the filing date of the plaintiffs' wage and hour claims.

KRS 413.190(2) explains the law in Kentucky with respect to equitable tolling. It states in pertinent part:

> When a cause of action ... accrues against a resident of this state, and he by absconding or concealing himself or by *any other indirect means* obstructs

the prosecution of the action, the time of the continuance of the absence from the state or obstruction shall not be computed as any part of the period within which the action shall be commenced. But this saving shall not prevent the limitation from operating in favor of any other person not so acting, whether he is a necessary party to the action or not.

KRS 413.190(2)(emphasis added).

"[A]ny other indirect means" has been interpreted to mean some affirmative act or conduct which misleads or deceives the plaintiff and obstructs or prevents him from instituting a suit during a period of time in which he may lawfully do so. *Adams v. Ison*, 249 S.W.2d 791, 793 (Ky. 1952).

The circuit court held that "there was no duty on the part of the City to report or disclose specifically their non-inclusion of the pay elements in the firefighters' overtime payments" and that there was no evidence of concealment or obstruction which would have prevented the Hasken Appellees from discovering any potential cause of action. Because there was no evidence that the City concealed its overtime pay calculations or obstructed the prosecution of the Plaintiffs' claims regarding overtime pay, the court held that the doctrine of equitable tolling did not apply.

The Appellees argue that the calculations by which the overtime pay rate was derived were so complicated that it would be unreasonable to expect the firefighters to understand whether their overtime pay was being properly calculated. They point to correspondence between counsel for the City and counsel for Appellees which conveyed inaccurate statements—apparently

---

**3.** In the circuit court, the Hasken Appellees argued alternatively that the statute of limitations should be tolled based on the "discovery rule." However, on appeal, their argument was based solely on "equitable tolling."

based on their own confusion—as evidence of the complexity of the overtime rate calculation. They also emphasize that the Department of Labor's Senior Investigator, Denise Brewington, admitted "she had overstated her ability" to determine whether and what elements of pay were included in the firefighters' paychecks based merely upon looking at a pay stub.

Appellees place particular reliance on the testimony of Mac Unger. Unger was designated by the City as its representative under CR 30.02 to give deposition testimony on its behalf. But while he expressed his belief that City representatives gave erroneous information to firefighters who asked questions regarding their overtime calculation, there was no evidence that this ever actually occurred.

In order for the statute of limitations to be tolled under KRS 413.190(2), the City's representation or act, "intentional or otherwise, must have been calculated to mislead or deceive and to induce inaction by the injured party." *See Adams* at 793. Even though the method of calculating the overtime pay rate was exceedingly confusing, and the information on the pay stubs was not overtly illustrative of the City's error, such facts do not indicate that the City was using the puzzling nature of the calculations to mislead or deceive the firefighters so as to prevent them from bringing a cause of action against the City for unpaid due compensation. There is no other evidence in the record that contradicts this conclusion.

## CONCLUSION

In sum, we affirm the circuit court's disposition of the case in all respects. We find that the Final Order's misinterpretation of the 803 KAR 1:060 amounted to an arbitrary and capricious exercise of the Secretary's authority and was without the support of substantial evidence on the rec-

ord. It was therefore proper for the circuit court to remand the case to the Department of Labor for reinstatement of the Hearing Officer's Recommended Order, which properly interpreted the regulation, as the Findings of Fact, Conclusions of Law, and Final Order of the Department of Labor. We also find, consistently with the Opinion and Order of the circuit court, that the exclusion of the Clothing Allowance from the additional elements of pay was not clearly erroneous. Finally, we find that the statute of limitations, KRS 413.120, was not tolled under the doctrine of equitable tolling.

ALL CONCUR.